This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Baur, et al. (hereinafter referred to as the "property owners"), appeal from the decision of the Medina County Court of Common Pleas. We affirm.
 I.
This is an appeal from a declaratory judgment which declared that the present zoning of the property owners' land, located on Reimer Road in the City of Wadsworth, Medina County, is constitutional. The land in question is zoned R-4 residential and consists of four parcels totaling approximately ten acres. A single-family dwelling is presently located on each parcel.
As indicated by a map of the city, the property at issue fronts the southern side of Reimer Road. To the south and west of the property, the land is zoned C-3 commercial. To the north, the zoning is R-3. The R-3 property along the northern side of Reimer Road, which is directly across from the property at issue, is currently being used for institutional purposes, having been developed with a church and a school. The property to the east is located in Wadsworth Township. Currently, this land is used for agricultural purposes.
Previously, the property owners filed an application for a zoning amendment, attempting to change the zoning classification of the land at issue from R-4 to C-3. The City of Wadsworth Planning Commission approved the application and the Wadsworth City Council voted to rezone the land. However, before the change became final, Wadsworth residents, by referendum, restored the property to residential use. On May 12, 2000, the property owners filed a complaint seeking a declaratory judgment to have the present residential zoning declared unconstitutional, in effect, to overturn the referendum. The trial court ruled that the present zoning ordinance was constitutional as applied to the property at issue. This appeal followed.
 II.
The property owners assert three assignments of error. As they have consolidated the first and second assignments of error into a single argument, we will consider them together.
 A. First Assignment of Error "THE LOWER COURT ERRED AND ABUSED ITS DISCRETION IN RULING THAT THE CURRENT R-4 ZONING OF APPELLANTS' LAND IS CONSTITUTIONAL WHEN THE UNREBUTTED EVIDENCE IN THE RECORD PROVES, BEYOND FAIR DEBATE, THAT THE R-4 ZONING OF THE LAND (WHICH IS PHYSICALLY LOCATED WITHIN A COMMERCIAL-RETAIL ZONED AREA) IS ARBITRARY, UNREASONABLE, AND WITHOUT SUBSTANTIAL RELATIONSHIP TO THE PUBLIC HEALTH, SAFETY OR WELFARE OF THE CITY OF WADSWORTH, AS FURTHER EVIDENCED BY THE WADSWORTH CITY COUNCIL'S 6-1 VOTE AND PLANNING COMMISSION'S 4-1 VOTE TO REZONE APPELLANTS' LAND C-3 (COMMERCIAL-RETAIL)."
 Second Assignment of Error "THE LOWER COURT ERRED BECAUSE ITS RULING THAT THE R-4 ZONING OF APPELLANTS' LAND IS CONSTITUTIONAL IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND IS UNSUPPORTED BY ANY CREDIBLE EVIDENCE IN THE RECORD."
In the first and second assignments of error, the property owners essentially assert that the trial court erred in ruling that the current zoning is constitutional as applied to their land. We disagree.
Zoning ordinances are presumed constitutional. Cent. Motors Corp. v.Pepper Pike (1995), 73 Ohio St.3d 581, 583-84. Accordingly, a party challenging the constitutionality of a zoning classification "bears the burden of proof and must prove unconstitutionality beyond fair debate."Goldberg Cos., Inc. v. Richmond Hts. City Council (1998),81 Ohio St.3d 207, 209. The "beyond fair debate" standard is analogous to the standard of "beyond a reasonable doubt" in criminal law. Cent. MotorsCorp., 73 Ohio St.3d at 584.
A zoning regulation is presumed constitutional unless the challenger demonstrates beyond fair debate that it is "`clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare[.]'" Goldberg, 81 Ohio St.3d at 213, quoting Euclid v. Ambler Realty Co. (1926), 272 U.S. 365, 395,71 L.Ed. 303. Zoning regulations must bear a substantial relation to the public health, safety, morals, and general welfare whether legislation is enacted by a legislative body or through a referendum of voters. Mintzv. Pepper Pike (1978), 57 Ohio App.2d 185, 190. "When the challenge involves a factual determination [as to whether the ordinance meets the standard as set forth in the Euclid case], the trial court is in a better position to evaluate the testimony of witnesses and the evidence presented." Mays v. Miami Twp. Bd. of Trustees, 2nd Dist. No. 18997, 2002-Ohio-3303, at ¶ 11. Therefore, a reviewing court will not disturb the findings of a trial court unless the findings are against the manifest weight of the evidence. Id.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), 9th Dist. Nos. 97CA006897/97CA006907.
"The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
In the present case, the property owners articulated reasons for the proposed zoning change. In support of their argument, the property owners produced evidence that the property at issue was surrounded to the south and west by land zoned for commercial purposes. Further, the land to the east was township property currently used for agricultural purposes and the land to the north, while zoned residential, was currently used for institutional purposes.
The property owners also produced evidence, through several witnesses, that commercial development and other development in the city has impacted the land at issue and, also, that land which is considered isolated residential property can have a sense of separation from the rest of a community. One witness for the property owners stated that it would be hard to develop individually each of the four parcels because there would be little room to screen the land at issue from the nearby commercial land. Further, it was opined that it would be hard to develop the entire property as zoned due to the isolation of the property and nearby commercial development. A property owner witness also mentioned a gas well located on the adjacent agriculture land which would make it hard to develop new residential property under the current city regulations. Evidence was also produced through another witness that this land could not be considered a buffer between new commercial development and other property in the city because, upon considering how the surrounding land was presenting being used and also that the land at issue abutted township property, there was nothing that the land at issue could buffer.
While the property owners assert that the evidence that they presented overcomes the presumption of validity to which the ordinance is entitled, we disagree and find that the trial court's judgment is supported by evidence in the record. Among the reasons cited by the City of Wadsworth for maintaining the present zoning are the fact that the land was currently being used in a manner consistent with the zoning, that the city needs to ensure a balance between commercial and residential uses, that there is a need for low and moderate income housing, and also that the current zoning promotes the city's comprehensive plan. Upon considering the evidence submitted by the parties, it is apparent that, while there are regulations pertaining to development near gas and oil wells, such regulations pertain to both residential and commercial development. It is also clear that the regulations actually limit the placement of wells within the city, permitting the wells if the owners or occupants of any building or structure waive the distance requirement and a variance is granted. Also, upon reviewing the city's comprehensive plan, it is apparent that the land at issue is within the Great Oaks residential district. While the plan notes that additional development along the High Street commercial corridor, which runs along the southern and western sides of the property, could place redevelopment pressure upon the single family homes to the north, the plan also points out the importance in preserving the residential character and limiting the encroachment of commercial development in the High Street arterial district and the existing residential neighborhoods that are to the south of the property at issue and also surround the narrower High Street commercial corridor indicated on the plan.
Further, through examination and cross-examination, evidence was produced that R-4 zoning permits one, two and three-family dwellings and that, although residential capacity currently exceeds demand, the city has a need for additional low and moderate income housing. Evidence also demonstrated that the land at issue could potentially be developed as senior housing. Testimony indicated that many people in low and moderate income housing, elderly people, and people without a driver's license benefit from being within walking distance of commercial land, both for employment and shopping purposes. Also, testimony indicated that while some people could consider farming and its associated agricultural activities to be a nuisance, other people believe that agricultural land is an asset and purposely build residential houses next to agriculture. Moreover, evidence was introduced that the zoning code permits parking as a use on property adjacent to commercial land.
Upon considering all of the relevant factors and circumstances, we cannot conclude that the trial court acted against the manifest weight of the evidence when it found that the property owners' evidence produced no more than a debatable question and, therefore, failed to establish beyond fair debate that the ordinance was clearly arbitrary and unreasonable, having no relation to public health, safety, morals, or general welfare. See Goldburg, 81 Ohio St.3d at 213. Consequently, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. See Thompkins, 78 Ohio St.3d at 387. Clearly, the standard of review which must be followed, that of reviewing the decision of a trial court based on manifest weight as to whether the property owners overcame the presumption of validity attached to a zoning ordinance, makes it difficult for an appellate court to support the rights of the private property owners. The property owners' first and second assignments of error are not well taken and are overruled.
 B. Third Assignment of Error "THE LOWER COURT ERRED BY SOLICITING AND ALLOWING AN UNQUALIFIED WITNESS (A PERSON WITH AN ACCOUNTING DEGREE AND NO PRIOR ZONING CHANGE APPLICATION EXPERIENCE) TO OFFER EXPERT TESTIMONY ON A ZONING ISSUE, OVER TIMELY OBJECTION BY APPELLANTS' TRIAL COUNSEL, AND BY APPARENTLY RELYING ON THIS UNQUALIFIED TESTIMONY AS A BASIS FOR FINDING A `FAIR DEBATE.'"
In the third assignment of error, the property owners assert that the trial court erred when it allowed Jefferey Kaiser, the planning director for the City of Wadsworth, to testify as an expert witness with regard to the zoning of the land at issue. We disagree, although the weight of the evidence presented was obviously slight.
A trial court's ruling as to whether a witness is qualified to testify as an expert will not be reversed absent an abuse of discretion. Statev. Mathes (June 13, 2002), 9th Dist. No. 20225. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. Evid.R. 702 provides that a witness may testify as an expert when all of the following apply:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
To qualify as an "expert" under Evid.R. 702, "[n]either special education nor certification is necessary[.]" State v. Baston (1999),85 Ohio St.3d 418, 423. Rather, an expert need only possess knowledge that will aid the trier of fact in assessing the evidence. Id. Regarding Evid.R. 702(C), "the court must act as a `gatekeeper' to ensure that the proffered scientific, technical, or other specialized information is sufficiently reliable." State v. Rangel (2000), 140 Ohio App.3d 291,295. In determining reliability, "[r]elevant evidence based on valid principles will satisfy the threshold reliability standard for the admission of expert testimony." State v. Nemeth (1998), 82 Ohio St.3d 202,211.
In support of their argument that Mr. Kaiser does not qualify as a person who can give an expert opinion, the property owners point to the fact that Mr. Kaiser has an undergraduate degree in accounting and allegedly possesses insufficient planning experience. This lack of training and experience, they assert, leads to a failure of reliability as required in Daubert v. Merrill Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, 125 L.Ed.2d 469, and Kumho Tire Co., Ltd. v. Carmichael
(1999), 526 U.S. 137, 143 L.Ed.2d 238.[1]
First, in reference to Evid.R. 702(A), there is no argument as to whether Mr. Kaiser's testimony related to matters beyond the knowledge or experience of laypersons. With regard to Evid.R. 702(B), the record demonstrates that Mr. Kaiser has specialized knowledge, skill, experience, training, and education to qualify as an expert with respect to his knowledge of zoning and other land use planning principles. Specifically, it is clear that Mr. Kaiser has a masters degree in city and regional planning from the Ohio State University. Additionally, prior to his current position of planning director, his planning experience included both his position as a planning intern with the Ohio Department of Transportation and also his position as a development planner for the City of Kent, Ohio. If the property owners believed there to be any weakness in either his experience or expertise, this could have been brought forth during cross-examination, affecting the weight that the trier of fact accorded his testimony. See Gartner v. Hemmer, 1st Dist. No. C-010216, 2002-Ohio-2040, at ¶ 28.
Finally, as pertains to Evid.R. 702(C), Mr. Kaiser testified that he had looked at the rezoning application, that he was familiar with the area, that he had visited the property, and was familiar with the city's zoning code. Based upon his knowledge and experience, we find that Mr. Kaiser's testimony related to specialized information and was sufficiently reliable. After a careful review of the basis for Mr. Kaiser's testimony as an expert, we conclude that the trial court did not abuse its discretion in allowing him to testify as an expert with regard to the proposed zoning change. The property owners' third assignment of error is without merit.
 III.
The property owners' assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
BAIRD, P.J., WHITMORE, J. CONCUR.
[1] It appears that the property owners may also be assigning error to the trial court through their mention of the fact that the court invited Mr. Kaiser to give an expert opinion on the issue at hand; however, pursuant to App.R. 16(A) and Loc.R. 7(A)(7), "briefs are to contain a separate discussion of each error alleged, as well as argument and authority supporting the party's position." Kremer v. Cox (1996),114 Ohio App.3d 41, 60. An appellant must "demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M; see, also, Loc.R. 7(A)(7). Because the property owners have failed to comply with App.R. 16(A)(7) and Loc.R. 7(A)(7), they have not demonstrated any error by the trial court with regard to the invitation and solicitation of Mr. Kaiser's opinion. Accordingly, this court chooses to disregard any potentially assigned error relating to this matter.